Herzfeld-Phillipson Company, Appellant, vs. City of Milwaukee, Respondent.

*May 9—June 6, 1922.*

*Taxation: Property acquired as of May 1st: Taxation districts in Milwaukee: City as unit: Property wrongfully assessed: Appearance before board of review: Notice: Constitutional law: Due process on assessments.*

1. One becoming the owner of goods as of May 1st is legally liable for the taxes levied pursuant to an assessment made as of that date.
2. Under sec. 1044, Stats. 1915, where a trustee in bankruptcy sold a stock of goods at public sale on May 1st, but retained the key to the store building in which they were, and did not give possession until confirmation of the sale the following day, the goods should have been assessed to the trustee and were not legally assessed to the buyer.
3. Under secs. 1030a, 1031, Stats. 1915, the assessment districts into which the city of Milwaukee is divided are merely for the purpose of conveniently administering the system of taxation and are not separate and independent districts. The city constitutes but one assessment district, and is the unit, and the privileges and duties of taxpayers with respect to the review of assessments are governed accordingly.
4. Under sub. 6, sec. 1061, Stats. 1915, one owning taxable property in one assessment district of the city of Milwaukee cannot recover taxes assessed against him and paid under

protest because property in another district in that city was improperly assessed to him, as he could have ascertained this fact, made full disclosure of his personal property subject to taxation in the district before the board of review, and have had the error corrected.

5. Said sub. 6 does not violate sec. 1, amendm. XIV, Const. U. S., or secs. 1, 9, art. I, Const. Wis., the taxpayer having notice that the assessment rolls are open for examination and notice of the meeting of the board of review.

6. When a statute prescribes the time when objections to an assessment may be made and heard, and when notice as required by statute is given of such opportunity, there is a sufficient compliance with the constitutional provision relative to due process of law.

7. Secs. 1101, 1102, Stats. 1915, relating to proceedings before justices of the peace for the collection of taxes, do not repeal or change sub. 6, sec. 1061.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

Action to recover taxes paid under protest. The tax was levied on a stock of merchandise located in the Eighth assessment district of the city of *Milwaukee* in the possession of William B. Weller, trustee of the bankrupt estate of the Bautch Department Store Company. On May 1, 1916, pursuant to an order of the referee in bankruptcy, Weller conducted a public sale of the property and accepted, subject to the confirmation of the court, a bid of $59,000 made by the plaintiff company. Such confirmation was ordered on May 2d, and on that date plaintiff paid the purchase price, took possession of the stock of goods, and received a bill of sale.

Sec. 1033, Stats. 1915, provided that "all personal property shall be assessed as of the first day of May," and sub. 8, sec. 1040, that "no change of location or sale of any personal property after the first day of May in any year shall affect the assessment made in such year."

The assessor of the Eighth district made an assessment of $59,000 as of May 1st against plaintiff on the stock of goods. No other assessments were made against plaintiff

for property in this district. Plaintiff owned and operated the Boston Store and paid taxes in the Tenth district.

There is one board of review for the city of *Milwaukee*. In 1916, after having advertised ten days prior to meeting as required by statute, it met on the last Monday in June and remained in session until the first Monday in August, the full length of the period required by law.

The trial court found as facts that plaintiff had no knowledge of the assessment of $59,000 made by the assessor of the Eighth district until it received its tax bill some months after the session of the board of review for the city of *Milwaukee;* that plaintiff made no protest or appeal to the board of review from such assessment; that plaintiff paid the amount of the tax, $1,226.67, under protest, on February 26, 1917, and petitioned the common council for a refund, which petition was refused.

He held as conclusions of law that plaintiff was not the owner of the stock of goods on May 1, 1916; that plaintiff was not subject to assessment and taxation on said stock during the year 1916 in the Eighth district; and that plaintiff's failure to first present its objection to the board of review bars its claim in this action.

Judgment was ordered dismissing the complaint.

For the appellant there was a brief by *Bottum, Hudnall, Lecher & McNamara* of Milwaukee, and oral argument by *Louis A. Lecher.*

For the respondent there was a brief by *John M. Niven,* city attorney, and *Walter J. Mattison,* assistant city attorney, and oral argument by *Mr. Mattison.*

JONES, J. It is clear that, if the appellant became the owner of the goods as of May 1st, it was legally liable for the taxes levied pursuant to assessment as of May 1st. *Day v. Pelican,* 94 Wis. 503, 513, 69 N. W. 368.

It is claimed by counsel for respondent that the title to the goods passed to the appellant on the 1st day of May by

the acceptance of its bid, or at least that it acquired an equitable interest on that day, and that on the confirmation of the sale by the referee the title related back to the time when the bid was made.    There are authorities to the effect that the relation of a bidder at a judicial sale is analogous to that of a purchaser of land holding under a land contract, and it is doubtless true that the equitable owner of property ·in his possession under appropriate statutes may be liable for taxes assessed against such property. .Our statute provides that:

"Personal property shall be assessed to the owner thereof, except that when·it shall be in the charge or possession of some person other than the owner or person beneficially entitled thereto in the capacity of parent, guardian, husband, agent, lessee, occupant, mortgagee, pledgee, executor, administrator, trustee, assignee, receiver, or other representative capacity, it shall be assessed to the person so in charge or possession of the same. . . ."    Sec. 1044, Stats. 1915.

In our opinion this statute required that the stock of goods in this case should have been assessed to the trustee. If the possession had been surrendered when the bid was made, a different situation might have arisen.    But the trustee continued to hold the key and declined to give possession.    It is our conclusion that the trial court correctly held that the property was not legally assessed to plaintiff.

Counsel for the city argue that since the plaintiff made no objection before the board of review, under the provisions of sub. 6, sec. 1061, Stats. 1915, it is barred from maintaining this suit.    This section was as follows:

"6. No person shall be allowed in any action or proceeding to question the amount or valuation of personal property assessed to him unless in person or by agent he shall have first presented his objections thereto before the board of review of the district in which such assessment was made and in good faith presented evidence to such·board in support of such objections and made full disclosure before said board, under oath, of all his personal property liable to

assessment in such district and the value thereof, except when prevented from making such presentation and disclosure by a failure to give the notice required by section 1056, or by other omission of duty on the part of the assessor or of such board."

Appellant's counsel in their brief thus state their view of the issue to be decided:

"The question here for review is: Is a person against whom a tax assessment has been wrongfully and unlawfully made on personal property, which he does not own and in an assessment district in which he owns no personal property whatever, and is, therefore, not liable to assessment at all in that assessment district, barred from defending against payment of the tax or from recovering the tax if paid under protest, merely because he did not appear before the board of review of that assessment district to contest the tax, although he had no notice that any tax had been assessed against him in that district and although he could not lawfully be assessed in that district at all?"

They then argue that there are 1,500 assessment districts in the state and that it cannot be the law that a taxpayer must make inquiry in every district of the state and ascertain whether property he does not own is illegally assessed to him or be subject to the peril of being assessed in any district and barred by the decisions of the several boards of review in case he does not appear before them and object to the illegal tax.

The argument proceeds on the theory that the districts in *Milwaukee* are distinct and independent of each other in the same sense as the other assessment districts of the state. Is this the correct theory?

When the assessment was made the statute was in part as follows:

"In all cities of the first class, whether organized under general or special charter, the tax commissioner or other head of the taxation department of such city by whatever name he may be known, shall divide such city into sixteen districts for assessment purposes and fix the boundary lines

thereof without regard to ward lines, to be approved by the common council. The said tax commissioner shall appoint one assessor for each district who shall be a resident of the district for which he is appointed and hold office in accordance with the civil service laws applicable to such city. They shall devote their entire time and attention to the duties of their office and shall not actively engage in any other occupation, pursuit, business or profession. . . ." Sec. 1030a, Stats. 1915.

The rest of the section related to the salaries to be paid, the termination of their terms, and the salaries of the deputy tax commissioner.

Although the statute designated these subdivisions as assessment districts it was for *assessment purposes*. The plan prescribed by the legislature for making the assessment is necessarily quite different in cities of the first class from that adopted in rural communities and in smaller cities. There is a tax commissioner who is head of the taxation department of the city and who necessarily has supervision of the whole subject. Many more persons are required to complete the assessment than in the towns and smaller cities. Under the statute the several assessors were required to deliver their respective rolls to, and file the same with, the tax commissioner on the last Monday in June of each year.

On receipt of these rolls the tax commissioner was required to give notice by publication in the official paper of the city for ten days that on a day therein named for each assessment district the assessment roll for each assessment district would be open for examination by the taxable inhabitants thereof, and at the same time the tax commissioner was required to call together all the assessors, and the tax commissioner, with the assessors, constituted an assessment board.

In order that valuations throughout the city should be made on a uniform basis, and before the assessment roll was completed, the board of assessors, under the direction

and supervision of the tax commissioner, were required to compare the valuations and make all necessary corrections, and all other just and necessary changes to arrive at the true value of the property within the city.   By the statute the concurrence of a majority of the board of assessors was necessary to determine any matter upon which they were requested to act, and the term "assessor," as used in the chapter, "is intended to embrace such board of assessors."   After turning over to the tax · commissioner the assessment rolls they had no authority, except by act of a majority of the board of assessors, to make any changes in their assessment rolls, and after all corrections and changes had been made the tax commissioner was required to submit the corrected assessment rolls to the board of review.

According to sec. 1031, Stats. 1915:

"The term 'assessment district' is used to designate any subdivision of territory, whether the whole or any part of any municipality, in which by law a separate assessment of taxable property is made by an assessor or assessors elected or appointed therefor." .

Evidently the estimates or assessment lists made by the respective assessors are not completed assessments.   The lists prepared by the assessors go to the assessment board for comparison, corrections, and changes.

In this board the assessors deal not only with property situate in the subdivisions assigned them but also with that of the entire city, and the city is treated as one district for the purpose of ratably apportioning the taxes for city purposes.   The city is treated as a single assessment district under the income tax law, without regard to the ward or district from which the tax is paid.   The same is true in regard to the distribution of taxes derived from public utilities.

Construing these statutory provisions together, we have come to the conclusion that these sixteen subdivisions are assessment districts only for the purpose of more conven-

iently administering the taxation system in cities of this class; that in *Milwaukee* they are not sixteen entirely separate and independent districts but they constitute one assessment district for *Milwaukee*, the city being the unit, and that the privileges and duties of taxpayers with respect to review of assessments are governed accordingly.

The main claim of appellant's counsel is that plaintiff owned no property in the district when it was assessed and that therefore the assessment was without jurisdiction and void, and that sub. 6, sec. 1061, Stats. 1915, relating to the necessity of appearing before the board of review, has no application. If the view we have expressed is sound, that the city is the unit and constitutes the district, this contention fails because it is admitted that plaintiff owned property in *Milwaukee*.

It may be conceded that the construction we place upon the statutes may cause some inconvenience to the taxpayers in ascertaining whether they are erroneously assessed, since there are sixteen assessment rolls sent to the board of assessors and the board of review. But public notices are given of the meetings of both of these boards. It is fair to presume that these boards were so organized that a taxpayer could easily gain information by inquiry concerning assessments made against his personal property.

In the present case the facts attending the purchase of the goods afforded some notice to the plaintiff that a tax might be levied on them. The bid was made and accepted May 1st. The sale was confirmed on May 2d. Although we hold that title did not pass until May 2d, the question when the title passed for purposes of taxation was not so free from doubt, but able attorneys differ in respect to it. It was plain that the goods should be assessed against some one. It would have been the more prudent course for both the trustee and the plaintiff to have the subject adjusted by the court before or at the confirmation of sale.

Appellant's counsel also argue that sub. 6, sec. 1061, does not apply in this case because, even though the city constituted the assessment district and plaintiff had property in the district, other personal property which he did not own was assessed to him, and that the prohibition against questioning the "amount or valuation of the property assessed" does not apply in such a case.

Such a construction would seem to eliminate the word "amount" from the statute. It is admitted by counsel for appellant that the assessor had jurisdiction to assess personal property owned by a taxpayer in his assessment district, and that if too high a valuation was placed upon it there was not an excess of power, but it was merely an error which the board of review might correct. It seems no greater hardship for the taxpayer to ascertain whether too much personal property has been assessed to him than to ascertain whether the valuation is too high. It may seem unjust that A., even though negligent in failing to investigate, should be compelled to pay a tax on the property of B. On the other hand, the administration of the tax laws might be seriously hampered if owners of taxable personal property could neglect to assert their rights before the board of review and then be heard to litigate questions of title in the courts. No economist would ever dream that there can be exact justice to all in administering any system of taxation. The most that can be hoped for is that there may be wise and just statutes and that they may be ably and honestly administered.

Although this statute has often been called drastic, it must be conceded that those who use reasonable diligence have their remedy if errors in assessment have been committed.

The privilege of appearing before the board of review and having mistakes corrected is coupled with the duty to make disclosure, and this duty is a very important provi-

sion in the statute. It is probable that assessors as often err in omitting or underestimating property as in listing too much or overvaluing. It would be unjust to the public if a taxpayer should succeed in having the board reduce his tax if at the same time a material part of his taxable property escaped taxation. It was doubtless such considerations as these which led the legislature to enact these sections of the statute.

It is further claimed by appellant's counsel that if sub. 6, sec. 1061, Stats., should be held to apply in this case, the statute is unconstitutional, violating sec. 1 of the Fourteenth amendment of the constitution of the United States and secs. 1 and 9 of art. I of the constitution of Wisconsin.

The argument on this contention again rests chiefly on the claim that plaintiff had no property in the district in which the property was assessed and therefore that there was no notice of the assessment. Since plaintiff owned personal property in *Milwaukee,* and since we have held that the city was the assessment district, it seems unnecessary to discuss this point at length. Plaintiff had the same notices as other taxpayers, and the only notices practicable in a large city. They were notified that on a certain day and at a certain place the assessment rolls would be open for examination. They were also given the notice of the meeting of the board of review. Plaintiff was presumed to know that on these occasions it would have the opportunity to object not only to the valuation placed on property assessed to it but also to the amount of such property. It is the rule that when the statute prescribes the time when such objections may be made and heard and when the notice is given of such opportunity as required by statute, it is sufficient, and there is compliance with the constitutional provision relative to due process of law. 1 Cooley, Taxation (3d ed.) 630; *Hagar v. Reclamation Dist.* 111 U. S. 701, 709, 4 Sup. Ct. 663; *Bratton v. Johnson,* 76 Wis. 430, 45 N. W. 412; *State ex rel. Foster v. Williams,* 123

Wis. 73, 100 N. W. 1052; *Michigan Cent. R. Co. v. Powers,* 201 U. S. 245, 301, 26 Sup. Ct. 459; 26 Ruling Case Law, 345.

Counsel for appellant also argue that secs. 1101 and 1102, Stats. 1915, relating to proceedings before justices of the peace for the collection of taxes, indicate that failure to appear and protest before the board of review is no bar in actions of this kind. We do not consider that those sections repeal or change the effect of the statute under consideration.

It follows that the plaintiff is prevented from maintaining its suit by its neglect to make objection before the board of review.

*By the Court.*—Judgment affirmed.

VINJE, C. J., and ESCHWEILER, J., dissent.