Milwaukee County, Appellant, vs. Dorsen, Respondent.

*April 6—October 11, 1932.*

For the appellant there were briefs by the *Attorney General, George A. Bowman,* district. attorney of Milwaukee county, and *Oliver L. O'Boyle,* corporation counsel, and oral argument by *Mr. O'Boyle.*

For the respondent there were briefs by *Churchill, Bennett, Churchill & Davis* of Milwaukee, and oral argument by *W. H. Churchill.*

The following opinion was filed May 10, 1932:

OWEN, J. The assessor of incomes for the county of Milwaukee in 1924 assessed an additional income tax upon the defendant for the years intervening between January 1, 1915, and January 1, 1924. The additional income tax so assessed was not paid by the defendant for the years subsequent to 1918, and this action was brought to recover the amount thereof.

Among other grounds, the defendant resists the collection of the tax upon the ground that it is void because the assessor of incomes failed to give the defendant notice of the proposed additional assessment, as required by sec. 71.11 (1), Stats. 1923, which was then applicable in the premises. That section conferred power upon the assessor of incomes to levy additional assessments upon income received during the years following January 1, 1915. The section provided, however, that "No additional assessment shall be made under this subsection without giving at least ten days' notice in writing of the proposed assessment to the person to be subjected thereto. Such notice may be served by mail." After making an examination into defendant's books and affairs and securing such information as was available with reference to the defendant's income during the years succeeding January 1, 1915, the assessor of incomes of Milwaukee county on June 10, 1924, addressed to the defendant a letter stating: "Herewith you will find a copy of report covering an examination made of your income tax liability as disclosed by your records and available information. The attached exhibits and schedules indicate an additional tax of $7,448.97 which is fully indi-

cated herein and which will be placed on the 1924 tax roll. Any further information you desire will be furnished by this office at your request." The taxpayer took no action in response to this communication except to refer it to his attorney. Neither the taxpayer nor his attorney called at the office of the assessor of incomes until after July 16, 1924, when the assessor of incomes wrote the taxpayer that he had levied an assessment upon his income of past years "in accordance with my letter of June 10, 1924." The defendant made no appeal to the county board of review for a reversal or re-examination of the tax thus imposed, as was his privilege under sec. 71.13 (4), Stats. 1923.

The respondent contends here, as the lower court held, that the notice of the additional income tax assessment required by the provisions of sec. 71.11 (1) was jurisdictional in nature, and that because the notice given the defendant by the assessor of incomes did not state a time and place when and where the defendant might appear before the income tax assessor and be heard upon the question of such additional assessment, the income tax assessor lost all jurisdiction to make the assessment, and that the tax sought to be collected in this action is null and void. Respondent relies upon *Everett Water Co. v. Fleming,* 26 Wash. 364, 67 Pac. 82; *Puget Mill Co. v. Skagit County,* 242 Fed. 333; *Byram v. Thurston County,* 141 Wash. 28, 251 Pac. 103, 252 Pac. 943; *Lewis v. Bishop,* 19 Wash. 312, 53 Pac. 165; *Weyerhaeuser Timber Co. v. Pierce County,* 133 Wash. 355, 233 Pac. 922, in which cases a similar statute was construed as requiring a notice of the time and place when and where the taxpayer might be heard.

In construing our statute it is well to have in mind, we think, some fundamental principles with reference to the subject of taxation as well as the general scheme and plan of taxation which has obtained in this state for many years. It is well settled by our decisions that the legislature has plenary power to deal with the whole question of taxation

subject to the constitutional limitations that taxes can be imposed only for public purposes and that the rule of taxation must be uniform. Its power is supreme in the selection of objects of taxation, determining the amount of taxes to be levied thereon and the purposes thereof, subject to such limitations, and in devising the machinery for assessing the taxable property, imposing taxes thereon, and in collecting and disbursing the same. *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797; *State ex rel. Hessey v. Daniels,* 143 Wis. 649, 653, 128 N. W. 565. It is no doubt necessary that any taxing system should, at some point during the process of assessment, accord the taxpayer an opportunity to be heard with reference to the valuation or taxability of his property. Such notice, however, may be general and rest only in the provisions of the statutory law of which the taxpayer must take notice. In 1 Cooley, Taxation (3d ed.) p. 59, and running through pages 60 and 61, it is pointed out that taxation proceedings are not judicial proceedings, and that "as applied to the proceedings for the levy and collection of taxes it does not imply or require the right to such notice and hearing as are deemed essential to the validity of the proceedings and judgments of judicial tribunals." And again:

"Where a law imposes a tax or assessment upon property according to its value, notice of every step in the tax proceedings is not necessary; the owner is not deprived of property without due process of law if he has an opportunity to question the validity or the amount of such tax or assessment either before that amount is finally determined or in subsequent proceedings for its collection. Personal notice is not an essential of due process in taxation; for that notice is sufficient which is given by statute, or by publication."

And on page 629 he says:

"It is not customary to provide that the taxpayer shall be heard before the assessment is made, except where a list is called for from him; but a hearing is given afterwards,

either before the assessors themselves, or before some court or board of review. And of the meeting of that court or board the taxpayer must in some manner be informed; either by personal notice, or by some general notice which is reasonably certain to reach him, or—which is equivalent—by some general law which fixes the time and place of meeting, and of which he must take notice. The last is a common method of bringing the assessment to the notice of the taxpayer, and it is perhaps the best of all, because it comes to be generally understood, and is remembered."

Speaking of notice and hearing as an essential element of due process of law, Mott, in his work "Due Process of Law," at sec. 89 says:

"But the courts found even the criterion of notice and hearing too strict for universal application. While it became the standard rule for testing the validity of administrative procedure, it could not always be applied even in this class of cases. Whenever it was appropriate, the courts insisted on a notice and hearing, but in the administration of tax assessments such a procedure might have blocked the whole governmental machine. The exigencies of efficiency in the collection of taxes made impossible the formalities of a personal notice. The courts saw this clearly and consequently held that a general notice, with a hearing at some stage of the proceedings, was sufficient. It became necessary to restrict even this rule. Although there must be an opportunity for some sort of hearing, the court held the mere failure to take advantage of the opportunity would not invalidate the proceedings. In some cases the chance to put in a formal statement of the value of the property taxed had been construed to be a valid hearing."

From the above it will be noted that much less formality, as to notice and opportunity to be heard, will suffice to satisfy the requirements of due process of law in taxation proceedings than before judicial tribunals.

For many years the statutes of this state have provided for a hearing of aggrieved taxpayers before a board of review created by the statute. The taxpayer is not entitled

to a specific notice of the time and place of the meeting of the board of review. The statute fixing the time and place of the meeting of such board, together with the giving of such general notice as the statute may require, has always been deemed a sufficient notice to the taxpayer to satisfy the requirements of due process of law. Our statutes have also generally required that the board of review shall not increase any assessments or make new assessments without notice given to the taxpayer of such intention in time to appear and be heard before the board in relation thereto. Such was the provision of sec. 71.13 (4) (b), Stats. 1923, with reference to additional income taxes. It is to be noticed that this statute did not require the notice to fix a time and place when and where the taxpayer might be heard. Nor did it fix any specific time within which the notice should be given. It simply provided in most general terms that the taxpayer be notified in time to appear and be heard before the board in relation to such proposed assessment.

Furthermore, for many years the plan of assessment and taxation set up by the statutes of this state has prohibited any taxpayer from questioning the validity of his assessment unless he has appeared before the board of review and challenged the validity or justice of such assessment. This also, so far as it related to income taxation, was fully expressed in sec. 71.14, Stats. 1923, which provided that "No person subject to assessment by the county assessor shall be allowed in any action or proceeding to question any assessment of income, unless objections thereto shall first have been presented to the county board of review in good faith and full disclosure made under oath of any and all income of such party liable to assessment." Under our scheme of assessment and taxation the taxpayer knows that he may appear before the board of review, of the time and place of the meeting of which he must keep himself advised, and there make objection and be heard with reference to

the justice of the tax sought to be imposed upon him. One who does not so appear may not thereafter question a tax imposed on property he did not own on May 1st (*Herzfeld-Phillipson Co. v. Milwaukee*, 177 Wis. 431, 189 N. W. 661), or a tax imposed on income not subject to an income tax (*Whitbeck v. Tax Commission*, 207 Wis. 58, 239 N. W. 655, 240 N. W. 804). The opportunity to appear before the board of review is sufficient to satisfy all of the calls of due process of law so far as the subject of taxation is concerned.

With these principles in mind, we do not think the provisions of sec. 71.11 (1), Stats. 1923, should be construed as requiring the notice of a proposed additional assessment to fix a time and place when and where the taxpayer might be heard. He is given notice that the assessor of incomes has in mind the imposition of an additional assessment. This is all the notice the statute provides for. When he receives this notice he may take such steps for the protection of his own interests as he sees fit. He may call upon the assessor of incomes and protest the injustice of the proposed additional assessment. But whether he does that or not, he knows that he will have an opportunity to be heard before the county board of review with reference to such assessment. No necessity springing from the requirement of due process of law demands anything more formal, and we know of no reason why a requirement of that nature should be read into the statute. When we consider that the proper discharge of governmental functions depends upon the regular collection of taxes, and the machinery of administration by which taxes are collected is often in the hands of those untutored in the law, courts should not inject into the plan set up by the legislature technicalities which may result in depriving the government of the funds necessary for the discharge of its functions. We therefore conclude that sec. 71.11 did not require the assessor of

incomes to fix a time and place when and where the taxpayer might appear and be heard with reference to the proposed additional assessment.

It is further contended that the letter of June 10th was not a notice of a proposed assessment at all, but was rather a notice that the additional assessment had already been levied. The letter said: "The attached exhibits and schedules indicate an additional tax of $7,448.97 which is fully indicated herein and which *will be placed* on the 1924 tax roll." The letter did not say that the assessment had already been made. It said that the exhibits and schedules indicated an additional tax, which tax *would be* placed on the 1924 tax roll. The taxpayer should have construed this letter in accordance with the law upon the subject, with knowledge of which he was charged. When he received this letter he knew that the statute required the assessor of incomes to notify him of a proposed additional assessment, and he should have construed the notice as one intended to comply with this requirement of the law. There may be some ambiguity in the notice, but when read in connection with the requirements of the law the taxpayer should not have been misled, nor could he have been misled to his irreparable damage. Even though the notice did indicate the final action of the assessor, he still had the privilege of appeal to the county board of review, of which he did not avail himself.

In view of the fact that the notice constituted a compliance with the requirements of the statute, there is not much point in discussing the question of whether the assessor lost jurisdiction to proceed further, resulting in a void assessment if in fact the notice required by the statute had not been given. We may remark, however, that the term "jurisdiction" is generally applied to courts or quasi-judicial bodies. It is not a term applicable to purely ministerial officers. Ministerial officers do not lose jurisdiction to per-

form their duties. There may be doubt as to whether assessors are in any sense quasi-judicial officers. If they be quasi-judicial officers at all, it is in a most remote sense. Some authorities hold that they are not judicial in any sense. *Henry v. Sargeant,* 13 N. H. 321; *Oskamp v. Lewis,* 103 Fed. 906. In view of the fact that the functions of the board of review are held to be quasi-judicial (*State ex rel. Kimberly-Clark Co. v. Williams,* 160 Wis. 648, 152 N. W. 450), there is much reason in saying that the duties performed by the assessor are but steps in the enforcement of a tax (*Beals v. State,* 139 Wis. 544, 552, 121 N. W. 347), and the validity of a tax is not dependent on a meticulous compliance with every statutory provision.

Sec. 71.11, Stats. 1923, under authority of which the assessor of incomes imposed the additional assessment, provides in effect that whenever it shall appear probable to the assessor of incomes or the county board of review that any person has been over or under assessed in any of the years following January 1, 1915, such person may be required to furnish such information as may be deemed necessary to enable them to ascertain the amount of taxable income received by such person during the year or years in question. Upon such information he shall determine the true amount of taxable income received during the year or years under investigation. Where the investigation discloses income not reported or assessed, it shall be assessed and placed upon the assessment rolls. As a further defense to this action, it is contended that the assessor in making the additional assessment did not act upon information. Upon this contention the trial court found against the defendant and held that the tax was supported by the character of information required by the statute. The assessment in this case was arrived at upon the so-called net-worth theory. It is conceded that the assessor did have the net worth of the de-

fendant as of January 1, 1924, but it is claimed that he did not have his net worth as of January 1, 1915. This was due to the fact that the taxpayer kept no books from which his net worth as of January 1, 1915, could be determined with accuracy. However, Mr. Cochran, the auditor acting for the income tax assessor, testified that he talked with the taxpayer, and after securing all the information which the taxpayer was able to give him he estimated his net worth as of January 1, 1915. From these conversations he was able to learn that the taxpayer was in business in a small way in 1914, and that during the time between January 1, 1915, and January 1, 1924, his business thrived, prospered, and was greatly enlarged, he at the latter date operating four establishments; that on the latter date he enjoyed very comfortable income aside from his business; and that no interest or dividends were included in his income during 1915 or 1916, indicating that he had no interest-bearing securities at that time. His statement of assets and liabilities on January 1, 1924, showed $68,700 of interest-bearing securities. His income tax return showed a progressive increase in income, with the exception of the year 1921, from January 1, 1915, to January 1, 1924. These facts would seem to indicate that the assessor acted conscientiously in fixing his net worth as of January 1, 1915. Our statutory scheme does not contemplate that the power of the assessor to make an additional assessment depends upon his correct ascertainment of the facts. He is required to determine, upon such information as he is able to secure, the amount of the additional assessment. If he errs, the taxpayer is given his remedy by appeal to the board of review and, successively, appeals to the Tax Commission and to the courts. If he fails to avail himself of these reviews, sec. 71.14 effectually forecloses him from ever thereafter, or anywhere, questioning such assessment. *Herzfeld-*

*Phillipson Co. v. Milwaukee, supra; Whitbeck v. Tax Commission, supra.* This statutory scheme gives to the taxpayer every possible right, and the plan does not contemplate that the assessing officers are in constant danger of losing jurisdiction and invalidating the assessment. Such a scheme would be too precarious in a matter in which the state has such a vital interest as the collection of taxes.

The respondent further contends that the tax is void because the board of review of Milwaukee county in 1924 did not hold its meetings at the court house. Sec. 71.13 (3), Stats. 1923, provided that the county board of review of each county constituting an assessment district should meet annually on the last Monday of July at ten o'clock a. m., at the court house in said county, to hear complaints and review assessments of income made by the assessor. The county board of review of Milwaukee county did meet at the time and place required by the statute. Pursuant to the established custom, however, in Milwaukee county, after so meeting the board of review adjourned to the office of the assessor of incomes, which is not in the court house, where all of its subsequent meetings were held. It appears that this is the usual custom in Milwaukee county, because all of the records with which they are required to deal are kept in the office of the assessor of incomes, and their work may be prosecuted with greater efficiency if their meetings be held where they have ready access to the records kept in the office of the assessor of incomes. The statute does not expressly declare that all of the meetings of the board of review shall be held in the court house. It simply provides that the first meeting of the board shall be held at the court house. This provision of the statute was complied with. In view of the fact that the statute does not require all future meetings to be held at the court house, nor prevent the adjournment of its meetings to some other place,

we should not read into the statute something that is not there when to do so would result in great inconvenience or the invalidation of taxes. Every one connected with this case freely confessed that it was a matter well known to all in Milwaukee county that the board of review through the years has customarily held its meetings in the office of the assessor of incomes. We cannot say that this practice constituted a violation of this statute. However, it seems plain that this is not a point that can be relied upon by the taxpayer to avoid this tax. So far as he is concerned, it made no difference whether the county board of review met at the court house or anywhere else. He made no attempt to appeal to the county board of review, and he was not misled by the fact that they failed to hold their meetings at the court house.

The foregoing deals with all of the points urged in this court for the avoidance of the tax. Our conclusion is that the tax is a valid and binding obligation on the defendant. The judgment must be reversed and cause remanded with instructions to enter judgment in favor of the plaintiff.

*By the Court.*—So ordered.

A motion for a rehearing was denied, with $25 costs, on October 11, 1932.