WEYENBERG SHOE MANUFACTURING COMPANY, Appellant,
vs. KELLEY and others (constituting the WISCONSIN
TAX COMMISSION), Respondents.

*December 8, 1932—March 7, 1933.*

For the appellant there were briefs by *Lines, Spooner &
Quarles,* attorneys, and *Maxwell H. Herriott* of counsel, all
of Milwaukee, and oral argument by *Mr. Herriott.*

For the respondents there was a brief by the *Attorney
General* and *F. C. Seibold,* assistant attorney general, and
oral argument by *Mr. Seibold.*

The following opinion was filed January 10, 1933:

FAIRCHILD, J.  On September 26, 1928, the Tax Com-
mission addressed a letter to the appellant containing notice
of its purpose to make an additional assessment against ap-
pellant by reason of income which had been disclosed in a
field audit and which had not been previously reported for

assessment. Upon protest by the taxpayer, the date of June 13, 1929, was set for hearing before the commission. On January 26, 1931, a decision was rendered by the commission allowing all but two of the taxpayer's objections, and reciting:

"It is therefore ordered that the assessment herein be and the same is hereby modified and corrected to conform to the foregoing determination of the commission; and it is further ordered that the assessment as modified shall be and the same hereby is affirmed and that the assessment as modified and corrected according to this determination be certified for collection on the tax roll next following this order."

This order was made more than four years after the close of the period covered by either of the income tax returns investigated.

The additional taxes sought to be collected are the result of additional assessment on incomes for the years 1924, 1925, and 1926. Additional assessments may be made within four years after the close of the period covered by the income tax return. Sec. 71.11 (5), Stats. 1929. It is contended in support of the "additional assessment" claimed to be effective by the Tax Commission that those words "additional assessment," as used in the above section limiting the time when such assessments may be made, refer to the determination of additional income taxes made on the basis of either a field investigation or an office audit, together with notice to the taxpayer entitling him to a hearing thereon, and do not refer to the assessment as finally determined and entered on the assessment roll after the hearing. This contention of the respondents points directly to the question the answer to which controls this case: When is an additional assessment of income tax made within the provisions of the statute? The word "assessment" may be found used in statutes and decisions suggesting different

shades of meaning. But, as used here with a design to fix a time after which uncertainties shall cease from troubling and the tax receipt be a verity, it carries the meaning of a final act complete in all particulars. This interpretation makes the statute of practical value and serves the purpose which the legislature must have had in mind when it fixed a four-year limit as the time within which assessments resulting in further exactions from the taxpayer may be made. An assessment is completed when the person and income to be taxed have been properly listed and the amount to be collected determined so as to be ready for certification to the treasurer. It is the proper officer's final act provided by statute to be completed within four years. If it had been intended otherwise and only to limit the time of beginning the proceedings for an additional assessment, the legislature would hardly have used in related sections words so clearly indicating the requirement of a final and conclusive act.

The language used in sec. 71.11 (5), material here, is:

"Assessments may be made if such assessments or corrections are made within four years after the close of the period covered by the income tax return."

Other provisions of the statutes which lay down the directory and mandatory requirements preceding the assessment support the proposition that it is the final act that must be performed within the time limit. Sec. 71.11 authorizes the verifying of any income tax return directly from the books and records of any person or from any other source of information; and in sub. (2) thereof it is provided that: "For the purpose of ascertaining the correctness of any return or for the purpose of making a determination of the taxable income of any person, the Tax Commission or assessor of incomes shall have power to examine, . . . ;" and then provides that: "Upon such information as it may be able to discover, the Tax Commission or the assessor of incomes

shall determine the true amount of income received during the year or years under investigation;" and for the making of additional assessments in the manner provided in sec. 71.10, which outlines the manner of making the initial assessment as well as additional assessments. Sec. 71.11 (3) provides that if as a result of an investigation an underassessment is found, the Tax Commission or assessor of incomes shall make a correct assessment; but sec. 71.12 contains a provision to the effect that no additional assessment shall be placed upon the assessment roll without notice in writing to the taxpayer giving him an opportunity to be heard. A study of the sections in the income tax law leads to the conclusion that the assessment of tax, that is its determination, so as to entitle it to be certified for·entry upon the assessment roll, is the "additional assessment" referred to. All the steps outlined and nothing less must be taken before the full period of four years has passed after the close of the period covered by the income tax return sought to be corrected or added to.

The act to be done before the close of this period is described by words in a statute of limitation. These words take a specific meaning from their use in the particular surroundings in which they are found. There is in the section quoted an intent to fix a time after which any proceeding amounting to an additional assessment shall not occur. Such statutes rest on sound policy and are as essential to good administration of tax laws as they are to the security and peace of business and welfare of citizens generally. They are to be construed with the aim of effecting the legislative intent. Sec. 71.12, with relation to notice to the taxpayer, provides a step toward the final and completed assessment. Under it no additional assessment by office audit or field investigation shall be placed upon the assessment roll without notice in writing to the taxpayer giving him an oppor-

tunity to be heard in relation thereto. This would be an idle gesture if the additional assessment could be completed before the hearing that is to follow the notice. If no objection exists to the proposal of increasing the assessment and the allotted time passes without the interposition of objections, the assessment becomes final and may be entered upon the tax roll; but if objections exist, as they did on the part of this taxpayer, some of which were recognized as valid by the taxing authorities, the amount of the tax cannot be finally determined until the notice has been given, the objections considered, and the decision made. The mere opinion formed by the taxing authorities while investigating taxable income does not constitute "additional assessment." Again, sec. 71.12 requires notice. This apprises the taxpayer of the opinion formed, and this notice must precede the additional assessment. *Milwaukee County v. Dorsen,* 208 Wis. 637, 242 N. W. 515.

In a tax case arising out of a claim against a municipality (*Worthington Pump & M. Corp. v. Cudahy,* 182 Wis. 8, 195 N. W. 717), we find a somewhat analogous situation. The statute there involved provides that no suit to recover illegal tax may be maintained against a city unless commenced within one year after the payment thereof (sec. 74.73). There is also in the law a requirement that no action can be maintained against a city upon a claim unless the claim shall have been submitted to the common council and disallowed; that failure to pass upon the claim within sixty days after presentation is a disallowance. The claim was not filed in time to permit the sixty-day period to elapse before the expiration of the year. Action was started, however, within the year and before the council had disposed of the claim. Upon appeal in this court it was held that the action was premature; that the administrative act of filing the claim and the disallowance thereof within sixty days must occur and the action be begun within one year after the

overpayment to the municipality. This interpretation recognizes a series of steps each of which must be completed in due course before the act itself may be perfected, and all must have occurred within the space of time prescribed for the doing of the final act. *Klingler v. Milwaukee Mechanics Ins. Co.* 193 Wis. 72, 213 N. W. 669, is of similar import. It seems clear and certainly within the bounds of reason that the final or additional assessment shall not be made until investigation is completed and that there can be no completion of the investigation and final determination upon the matter until the taxpayer has had opportunity to be heard, to present additional evidence, and to have the taxing authorities consider the legal propositions which he may advance affecting a decision on what his income was.

The purpose of statutes of limitation is usually manifested by indicating the act and fixing a time within which such act is to be done or the rights involved given up. In a cause of action in favor of the state against which a statute of limitations exists, a letter by the chief law officer of the state advising of an impending lawsuit and of the amount claimed by the state would not interrupt the running of the statute.

We agree with the contention of the appellant that it is the liability for additional income taxes which it is important to the state and the taxpayer to have established and settled. The legislature intended by this statute to place in repose uncertainty of liability due to claimed untaxed income.

Our conclusion is that the legislature intended that the taxpayer should, after a definite period, know what his tax liability is. Upon termination of the four-year period he can close his books and deem himself free from further tax liability for the years that have passed beyond this time limit in the absence of legislative enactment reopening that period. The words "additional assessment" as used in the statute include that stage of the proceeding in which the tax is determined and made ready for entry on the assessment roll.

This must occur within the limit of time so fixed. The addi-- tional assessment in this case was not timely.

*By the Court.*—Judgment reversed, and cause remanded with instructions to vacate the additional assessment.

The following opinion was filed March 7, 1933:

PER CURIAM. Upon motion for a rehearing our atten- tion is called to the inclusion of the additional assessment on income of the year 1927 in the order vacating additional assessments.

The additional assessments under consideration in the case covered the years 1924 to 1927 inclusive. But the ques- tion raised was whether so much of the additional assess- ment as relates to income of the years 1924, 1925, and 1926 was made within the time permitted by law. The amount of the additional assessment on income of the year 1927 should not have been included in the direction to vacate the additional assessment.

The mandate is therefore modified so as to allow the additional assessment on income of the year 1927 to stand.