CURTIS COMPANIES, INC., and another, Appellants, vs. TAX COMMISSION, Respondent.

*November 10, 1933—February 6, 1934.*

For the appellants there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie* and *Daniel LaBar* of Madison.

For the respondent there was a brief by the *Attorney General* and *F. C. Seibold,* assistant attorney general, and oral argument by *Mr. Seibold* and *Mr. John S. Best* of Madison.

The following opinion was filed December 5, 1933:

WICKHEM, J.   The Curtis Companies, Inc., is a holding company, owning all the capital stock, except directors' qualifying shares, of the Curtis & Yale Company and of several other companies engaged in a similar business. The Curtis & Yale Company is a producing company, manufacturing and jobbing sash, doors, and miscellaneous millwork.   Its plant is at Wausau, is owned by Curtis Companies, Inc., and is leased by that corporation to the Curtis & Yale Company.   Both the Curtis & Yale Company and Curtis Brothers & Company, another subsidiary, with a plant at Clinton, Iowa, do extensive manufacturing and sell their products to outside dealers as well as to distributing subsidiaries of Curtis Companies, Inc.

Since 1920, Curtis Companies, Inc., and Curtis & Yale Company have filed returns of income with the Wisconsin Tax Commission, and reported Wisconsin income upon a separate accounting basis.

In December, 1929, a field audit of the books and records of both companies for the years 1925 to 1928, inclusive, was made.   Upon the basis of this audit assessments were made for additional income tax for these years, exclusive of interest, amounting to $6,319.90, against Curtis & Yale

Company, and the determination further made that Curtis Companies, Inc., was entitled to a refund of income and surtaxes in the amount of $491.55, exclusive of interest. In making these assessments the separate accounting method of reporting Wisconsin income was not changed. Due notice of the additional assessment was made and objections by the taxpayers resulted in a hearing before the Tax Commission. Upon this hearing the objection of Curtis Companies, Inc., that it was entitled to a greater refund was conceded, and that said company was entitled to a refund of $547.58 was established. Curtis & Yale Company conceded, and now concedes, that it was proper to assess against them an additional tax of $2,611.72, but objected to the balance assessed. The objection of Curtis & Yale Company to the assessment centers principally about the disallowance of a total of $66,640.47 for advertising expenses in the returns of the company for 1925, 1926, 1927, and 1928. These sums represent charges made to Curtis & Yale Company by Curtis Companies, Inc., as its proper share of national advertising authorized by it. As a result of the hearing the commission concluded that the separate accounting method did not reasonably reflect the Wisconsin income, and that the "proper basis for reporting in this case is, therefore, a consolidation of the incomes of the interrelated corporations and an apportionment thereof in the manner prescribed by the statutes." The assessment ultimately made was entered against Curtis Companies, Inc., the parent company. It is claimed by the plaintiffs that the commission in this assessment improperly treated the income of both companies as that of Curtis Companies, Inc., made an apportionment of part of it to Wisconsin, and then assessed the whole to the parent company.

The first contention of the plaintiffs is that there was no notice as required by sec. 71.12 of the statutes, which pro-

vides that "no additional assessment by office audit or field investigation shall be placed upon the assessment roll without notice in writing to the taxpayer giving him an opportunity to be heard in relation thereto." We think there can be no merit to this claim. As in *Milwaukee County v. Dorsen,* 208 Wis. 637, 242 N. W. 515, these taxpayers were given notice that the Tax Commission had in mind the imposition of an additional assessment. It was there stated that "this is all the notice the statute provides for. When he receives this notice he may take such steps for the protection of his own interests as he sees fit." After the field audit notice of the contemplated assessment was given, objections were made, and a hearing was had at which the whole subject was thoroughly considered, and the objections of the taxpayers heard. That the additional assessment differed from that contemplated at the time when the first notice was given does not call for a further notice and hearing. It was indicated in *Milwaukee County v. Dorsen, supra,* that too much attention should not be paid to formality. If a taxpayer is given notice of a proposed additional assessment and a hearing at which he has the opportunity to be heard upon all the questions involved, the fact that the hearing results in a substantial modification of the commission's original views does not make imperative a further notice and hearing before the additional assessment may be made. Under the doctrine of the case of *Weyenberg Shoe Mfg. Co. v. Kelley,* 210 Wis. 638, 246 N. W. 418, 247 N. W. 320, "The mere opinion formed by the taxing authorities while investigating taxable income does not constitute 'additional assessment.'" Here the additional assessment was the final act, and this was taken after an adequate notice and hearing.

Proceeding to the merits, it is the claim of the state that the Tax Commission was justified, upon the facts, in finding that the separate accounting method of reporting the income

of the corporations involved does not reasonably reflect the income properly assignable to Wisconsin, and in determining that the proper basis for reporting in this case is a consolidation of the incomes of the interrelated corporations and an apportionment thereof in the manner provided by the statutes. The determination of the validity of the commission's contentions and those of the plaintiffs requires a detailed study of several provisions of the statute.

Sec. 71.02 (3) (d) in substance provides that persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state. It is further provided that the amount of such income apportionable to Wisconsin may be determined by an allocation and separate accounting thereof, when, in the judgment of the Tax Commission, that method will reasonably reflect the income properly assignable to this state. The statute further provides, in case the commission concludes that this method does not properly so reflect the income; that the determination shall be as follows: Deduct from the total net income of the taxpayer such part as follows the situs of the property or the residence of the recipient. The remaining net income shall be apportioned to Wisconsin on the basis of the ratio obtained by taking the arithmetical average of the following three ratios: (1) the ratio of the tangible property owned by the taxpayer in Wisconsin in connection with his trade or business during the income year to the total of such property owned and used elsewhere in his trade or business; (2) in the case of persons engaged in manufacturing or in any form of collecting, assembling, or processing goods and materials within the state, the ratio of the total cost of manufacturing, etc., within this state to the total cost of manufacturing, etc., elsewhere; (3) in the case of trading, mercantile, or manufacturing concerns, the ratio of the total

sales made through or by offices, agencies, or branches located in Wisconsin during the income year to the total net sales made everywhere during said income year.

Sec. 71.25 (1) provides:

"(1) When any corporation liable to taxation under this act conducts its business in such a manner as either directly or indirectly to benefit the members or stockholders thereof or any person interested in such business, by selling its products or the goods or commodities in which it deals at less than the fair price which might be obtained therefor, or where a corporation, a substantial portion of whose capital stock is owned either directly or indirectly by another corporation, acquires and disposes of the products of the corporation so owning a substantial portion of its stock in such a manner as to create a loss or improper net income, the commission may determine the amount of taxable income of such corporation for the calendar or fiscal year, having due regard to the reasonable profits which but for such arrangement or understanding might or could have been obtained from dealing in such products, goods or commodities."

Sub. (2) provides:

"(2) For the purpose of this chapter, whenever a corporation which is required to file an income tax return, is affiliated with or related to any other corporation through stock ownership by the same interests or as parent or subsidiary corporations, or whose income is regulated through contract or other arrangement, the Tax Commission may require such consolidated statements as in its opinion are necessary in order to determine the taxable income received by any one of the affiliated or related corporations."

The commission relies upon the combined effect of these three sections to justify its procedure and the assessment. Having determined that the allocation of corporate income to Wisconsin, as arrived at by the separate accounting method, is controlled by four arbitrary factors, to wit: (1) the eleven and one-half per cent. margin allowed to the factories on sales to the distributing subsidiaries; (2) the distribu-

tion of advertising charges; (3) the distribution of general administrative charges; and (4) the rental charged Curtis & Yale Company for the Wausau factory, it is first contended that the commission had a right to require consolidated return under the authority given by sec. 71.25 (1). It is further contended that the domination of the Curtis & Yale Company by Curtis Companies, Inc., combined with the arbitrary character of the items which determine the Curtis & Yale income, justify the commission in disregarding the separate identity of the corporation and imposing a tax in accordance with the consolidated return. It is conceded that this tax probably should have been entered against the Curtis & Yale Company but it is contended that this is an error that can be readily corrected. It will be noticed that the commission does not conclude that the inter-corporate transactions under examination here were unfair during the years under audit, nor is it contended that either the form of corporate organization adopted or the contracts between the parent and subsidiary corporations had for their purpose the evasion of the income tax law by diverting a portion of the Curtis & Yale Company income properly attributable to its Wisconsin activities through subsidiaries doing business in the states not having an income tax law.

At the outset it seems clear that sec. 71.02 (3) (d) relates to the situation presented by a single taxpayer who does business within and without the state. He is permitted separately to account when that method reasonably reflects the income properly attributable to activities in this state, and if it does not, the statute contains a precise and detailed description of the manner in which the Wisconsin income is to be determined. This method involves the application to the total income of such a taxpayer, of the average of certain ratios described in the section. Assuming that Curtis & Yale Company was a wholly independent corporation and

not a subsidiary, it is clear that this section sets forth in detail the method of ascertaining its Wisconsin income. It is claimed, however, that the commission, for any purposes of the income tax law, may require a consolidated return in cases of affiliated corporations, and that having exacted this return, the corporations may be treated as a single corporation in applying the ratios described in sec. 71.02 (3) (d). Certainly sec. 71.25 gives no such authority to the Tax Commission. This section is entitled "Corporate tax evasion prevented." Its first subdivision deals with two situations: first, a corporation which so conducts its business as to directly or indirectly benefit the members or stockholders by selling its products at less than a fair price; second, where a corporation, a substantial portion of whose capital stock is owned either directly or indirectly by another corporation, acquires and disposes of the products of the parent company in such a manner as to create a loss or improper net income. It is not seriously contended that Curtis & Yale Company sold its products at less than a fair price, nor was this fact found by the commission. The second provision of the section obviously has no application to the Curtis & Yale Company since it was the producing company and had no contract whatever to dispose of the products of Curtis Companies, Inc. In the two situations above described, neither one of which, as it seems to us, applies to this case, the commission may determine the income of the corporations found to be engaged in an effort to evade taxes by disregarding these arrangements and estimating the reasonable profits which might have been made but for their existence.

It is argued by the commission that while the description in sec. 71.25 may not appear to fit the instant case, the commission's findings that there was present here an arbitrary income regulating device which in fact did operate to the benefit of the stockholder, in this case the parent company,

brings the situation within the first half of this subsection. In this connection it is contended that the section does not require a specific intent to evade income taxes, and that if its operation or result is such as to avoid taxes, the commission may disregard the plan. We cannot agree to this construction. If it once be admitted that the inter-corporate contract or arrangement does not establish an unfair price for the goods, and in addition that it is not a device adopted for the purpose of avoiding the provisions of the income tax law, sec. 71.25 has no application, and if the position of the commission is sound, it must be because the commission, from some source or by some process, has acquired the right to disregard all inter-corporate contracts for income tax purposes whenever it appears that the taxpayer corporation, the income of which is under investigation, is wholly owned by another corporation. This question we shall consider hereafter. It is of course clear enough that except for this question, presently reserved, the commission has no visitorial or supervisory control over the affairs of a corporation; that it cannot question the wisdom of its contracts or practices, being limited to a decision as to whether or not the contracts or business practices are colorable devices adopted to conceal income and avoid the tax.

In dealing with a somewhat similar question the court, in *United States v. Philadelphia Knitting Mills Co.* 273 Fed. 657, said, referring to the government:

"It has a right, therefore, to attack the action of a board of directors and show by evidence, not that a given salary is too much, but that, in the circumstances, the whole or some part of it is not salary at all but is profits diverted to a stockholding officer under the guise of salary and as such is subject to taxation."

In *Missouri ex rel. S. W. Bell Tel. Co. v. Public Service Comm.* 262 U. S. 276, 289, 43 Sup. Ct. 544, 547, 67 Lawy. Ed. 981, where a public service commission, in fixing a rate

for telephone service, disallowed an item of expense actually paid out to parent corporation by subsidiary, the court said:

"Four and one-half per cent. is the ordinary charge paid voluntarily by local companies of the general system. There is nothing to indicate bad faith. So far as appears, plaintiff in error's board of directors has exercised a proper discretion about this matter requiring business judgment. It must never be forgotten that while the state may regulate, with a view to enforcing reasonable rates and charges, it is not the owner of the property of public utility companies, and is not clothed with the general power of management incident to ownership."

In *Rhode Island Hospital T. Co. v. Commissioner of Internal Revenue,* 29 Fed. (2d) 339, bank officials, anticipating heavy losses due to precarious business conditions, set up a $200,000 reserve for bad debts. The board of tax appeals disallowed this deduction on the ground that the petitioner had resorted to guesswork in setting up this reserve. The court of appeals reversed this decision, stating:

"There is in this record no atmosphere of tax-dodging. While the honest judgment of bank officials as to the amount of profits made does not appear to be expressly made by statute *prima facie* evidence for profits-tax purposes, it is certainly, in the absence of any indication of a tax-dodging intent, to be given very substantial if not controlling weight."

The question still remains, however, assuming all this to be true, and assuming that the commission has no power under sec. 71.02 (3) (d), except in cases of attempted tax evasion, such as were dealt with in *Cliffs Chemical Co. v. Tax Commission,* 193 Wis. 295, 214 N. W. 447; *Palmolive Co. v. Conway,* 43 Fed. (2d) 226, 56 Fed. (2d) 83; *Buick Motor Co. v. Milwaukee,* 43 Fed. (2d) 385, 48 Fed. (2d) 801, whether the commission, in cases where the income of a wholly owned subsidiary is involved, may, upon that ground alone, entirely disregard corporate agreements as to price, expenses, and other factors which are essential to the

establishment of the net income, and proceed to determine the income upon the basis of its judgment as to the providence or business wisdom of such arrangements. We find no authority in the statutes to sustain the conclusion that the commission has such powers. The only basis for a claim to such powers rests in the undoubted right of the commission to exact reports that accurately reflect income, and to tax upon the basis of the true income. So long as the corporate form or the inter-corporate agreements do not constitute devices having the purpose or effect of covering up income actually received by the corporation whose affairs are under examination, they do reflect the true income of the corporation. The corporation reports, for example, in this case the aggregate income actually received from sale of products. It reports its actual expenditures for advertising and for rent. Its gross income, minus legitimate deductions, constitutes its net income upon which a tax may be levied. The situation is quite different from that in the *Palmolive, Buick,* and *Cliffs Chemical Co. Cases,* where profits actually earned by the subsidiary were routed to the parent corporation by special contract designed to prevent a showing of profit by the subsidiary.

It is not necessary here to consider whether it is within the power of the legislature to provide that the corporate identity of parent and subsidiary companies may or must be disregarded with respect both to returns and imposition of tax, and the two treated as one. The fact is that we find no such legislative grant of such power to the commission, unless it can be read out of the second subdivision of sec. 71.25, which gives the Tax Commission power to require, in the case of affiliated corporations, "such consolidated statements as in its opinion are necessary in order to determine the taxable income received by any one of the affiliated or related corporations." It is contended that this

section confers the power in question, but we think it falls short of this objective. It is plainly for the purpose of giving to the commission the means of securing data or information, and does not constitute a source of power to disregard the corporate identity or inter-corporate contracts, except as such disregard may be authorized by sec. 71.25.

In dealing with the same general question, the New York court of appeals, speaking through Judge CARDOZO, said:

"Public policy may indeed require that a foreign corporation manufacturing its products elsewhere shall not be at liberty to market them here by subsidiary corporations subject to its complete control without exposing the subsidiary to the same taxation as the parent. Convenience may demand that a corporation supplying a disguise shall be taxed as if it were one with the stockholder by whom the disguise has been assumed. The difficulty is that in the absence of prescribed conditions no such public policy had been declared, when these taxes were imposed, by the only agency of government competent to declare it." *People ex rel. Studebaker Corp. v. Gilchrist,* 244 N. Y. 114, 155 N. E. 68.

The same comment is applicable here. It has greater applicability to this case than to cases where the subsidiary, upon the record, may be considered as a mere bookkeeping device. In such a situation there may be merit to the contention that the parent corporation, operating under such a disguise, should be recognized and taxed upon the income of the subsidiary. But mere stock ownership is not enough where the subsidiary has its own officers who actually transact its affairs and the facts do not warrant the conclusion that the subsidiary has completely lost its autonomy. *People ex rel. Studebaker Corp. v. Gilchrist, supra; Procter & Gamble Distributing Co. v. Sherman,* 2 Fed. (2d) 165.

For the foregoing reasons judgment must be reversed.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment setting aside the

assessment and remanding the record to the Tax Commission with directions to reassess the tax as indicated in this opinion.

Owen and Fowler, JJ., dissent.

A motion for a rehearing was denied, without costs, on February 6, 1934.