BURROUGHS ADDING MACHINE COMPANY, Appellant, vs.
TAX COMMISSION and others, Respondents.

*February 6—April 15, 1941.*

For the appellant there were briefs by *Miller, Mack & Fairchild,* and oral argument by *Frederic Sammond,* all of Milwaukee.

For the respondents there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

WICKHEM, J.   Appellant is a Missouri corporation, duly qualified to transact business in the state of Wisconsin, the capital stock of which is wholly owned by Burroughs Adding Machine Company, a Michigan corporation.   Appellant is engaged in selling throughout the United States, Alaska, and Hawaii various adding, calculating, and bookkeeping machines manufactured by the parent company.   The latter transacts no business in Wisconsin and has no property here. In addition to appellant, the parent corporation owns the stock of twenty-five other subsidiaries engaged in selling and servicing machines produced by it.   The officers of appellant and the parent company were the same, and there were several directors common to both companies.

In 1921 appellant and the parent corporation entered into a contract by the terms of which appellant agreed to purchase from the parent all of the products manufactured by it.   It was agreed that for these products appellant would pay to the parent all sums received by it except such a sum as would permit appellant to earn annually twenty-four per cent of the par value of appellant's capital stock.   The corporations oper-

ated under this contract until 1934, and during the period of its operation appellant's books annually disclosed a net income of twenty-four per cent of $150,000, or $36,000 per year. In 1926 the Tax Commission demanded consolidated statements of the income of appellant and the parent company, but appellant refused the demand, whereupon a doomage assessment on $100,000 of income was proposed by the Tax Commission under sec. 71.09 (6), Stats., and sustained upon a subsequent hearing. Suit for an injunction was then brought by appellant in the district court of the United States, Eastern district of Wisconsin, the assessment being attacked upon various constitutional and statutory grounds. Relief was denied by the federal court. On November 10, 1930, the Tax Commission again demanded consolidated statements, but permitted appellant pending a field audit to file returns which stated its income as actually received and accounted for on its books, but adjusted by a restatement of the cost of the products it sold and certain items of expense. Thereafter, such returns were made by appellant for the years 1929 to 1933, inclusive. On January 1, 1934, a new contract was entered into between appellant and its parent. This provided for the sale by the parent to appellant at a fifty per cent discount from list prices and the allocation to appellant of a ninety per cent of sales and advertising expenses as well as a proportion of general expenses (principally incurred for jointly used offices). This contract established on a contractual basis the same discount, costs, and expenses as appellant had used in computing and restating its income for the years 1929 to 1933, inclusive, except that the apportionment of general expenses under the new arrangement was somewhat more favorable to appellant and to that extent increased the latter's income. On conclusion of the field audit in 1935, the auditor concluded that the income tax returns by appellant for the years 1929 to 1934, inclusive, did not reflect the proper amount of income derived from business transacted by appellant in Wisconsin.

He therefore consolidated the income of appellant with that of its parent, and to arrive at appellant's Wisconsin income applied to such consolidated income a percentage determined by taking the arithmetical average of three ratios similar to those established by sec. 71.02 (3) (d), Stats., for computing the income of a taxpayer doing business within and without the state of Wisconsin. The ratios were, (1) appellant's tangible property in Wisconsin to the total consolidated tangible property everywhere; (2) appellant's sales in Wisconsin to the total consolidated sales everywhere; and (3) appellant's manufacturing costs in Wisconsin to the total consolidated manufacturing costs everywhere. Instead of comparing, as in cases under sec. 71.02 (3) (d) a single taxpayer's property, sales and costs in Wisconsin to those everywhere, the parent and subsidiaries were treated as a unit and a ratio between appellant's property, sales, and costs in Wisconsin to those of the parent and all its subsidiaries everywhere was established. Since appellant was the only one of the affiliated companies to do business in Wisconsin, this allocated to appellant all of the income of the affiliated companies from activities in this state. The result of this computation was to apportion to appellant $80,348.04 more income than appellant had reported in the last returns made by it for the years 1929 to 1934, and an additional assessment on the basis of this additional income amounting to $5,475.56 was made and notice thereof given appellant December 20, 1935. On March 20, 1938, the Tax Commission made its decision confirming the additional assessment, and upon appeal the circuit court for Dane county confirmed the additional assessment and entered the judgment from which this appeal is taken.

The question here is whether there is any authority in the Tax Commission under the provisions of sec. 71.25, Stats., to require a consolidated return of the income of a parent and all subsidiaries, and then to compute the tax apportionable to Wisconsin in accordance with the factors set up in sec. 71.02

(3) (d). Appellant asserts that sec. 71.25 furnishes no authority for disregarding the corporate entity, and apportioning the tax on the basis of a section of the statute which in terms applies only to single taxpayers doing business within and without the state. It is claimed that this proposition was established by the case of *Curtis Companies, Inc., v. Tax Comm.* 214 Wis. 85, 251 N. W. 497. Appellant asserts that the Tax Commission is limited under sec. 71.25 to ascertaining what appellant's profits would have been except for the contract of 1921 between the parent and appellant, which it concedes had the effect of diverting income from Wisconsin, and that the employment of the ratios used by the commission to determine appellant's income tax does not disclose these profits.

The state contends that since the contract of 1921 was concededly unfair in that it tended arbitrarily to limit the profits of appellant and to divert income from the state of Wisconsin, the original returns based upon it for years 1929 to 1933 were properly disregarded under sub. (1) of sec. 71.25, Stats., and a consolidated return required under the provisions of sub. (2) of sec. 71.25; that while sec. 71.02 (3) (d) only applies to single taxpayers, and the commission cannot rely upon it as an express authority to use the ratios there set up in cases under sec. 71.25, nevertheless, the application of these ratios in the present situation accurately and fairly determines the amount of appellant's income, especially in view of the fact that appellant is the only one of the interrelated companies owning property or doing business in Wisconsin.

Sec. 71.25, Stats., reads:

"(1) When any corporation liable to taxation under this act conducts its business in such a manner as either directly or indirectly to benefit the members or stockholders thereof or any person interested in such business, by selling its products or the goods or commodities in which it deals at less than the fair price which might be obtained therefor, or where a corpo-

ration, a substantial portion of whose capital stock is owned either directly or indirectly by another corporation, acquires and disposes of the products of the corporation so owning a substantial portion of its stock in such a manner as to create a loss or improper net income, the commission may determine the amount of taxable income of such corporation for the calendar or fiscal year, having due regard to the reasonable profits which but for such arrangement or understanding might or could have been obtained from dealing in such products, goods or commodities.

"(2) For the purpose of this chapter, whenever a corporation which is required to file an income tax return, is affiliated with or related to any other corporation through stock ownership by the same interests or as parent or subsidiary corporations, or whose income is regulated through contract or other arrangement, the tax commission may require such consolidated statements as in its opinion are necessary in order to determine the taxable income received by any one of the affiliated or related corporations."

Sec. 71.25, Stats., is clear and explicit, and has been construed by this court in *Curtis Companies, Inc., v. Tax Comm., supra.* A substantially similar provision received the same construction in *People ex rel. Studebaker Corp. v. Gilchrist,* 244 N. Y. 114, 155 N. E. 68. Where, as here, an intercorporate agreement falls within the description of sub. (1) of sec. 71.25, it is the duty of the Tax Commission to determine the income which the taxpayer would have had had it not been for this income-diverting contract. *Curtis Companies, Inc., v. Tax Comm., supra; Cliffs Chemical Co. v. Tax Comm.* 193 Wis. 295, 214 N. W. 447. In the *Cliffs Case* it was held that the word "may" as it appears in sub. (1) of sec. 71.25 means "shall." In the *Curtis Case,* sub. (2) was held not to be a grant of jurisdiction to assess upon a consolidated income. This subsection does not provide an alternative course of action for the commission. It merely authorizes it to gather such data as may assist it in determining the income that the subsidiary would have had except for the contract which sec.

71.25 (1) authorizes it to disregard. The question, therefore, is whether a percentage of total consolidated income arrived at by taking an arithmetical average of the ratios of appellant's tangible property, sales and manufacturing cost in Wisconsin to total consolidated property, sales and manufacturing costs everywhere, establishes what appellant would have earned in Wisconsin had it not been for the contract of 1921. It is our conclusion that it does not do so. The fallacy in the method is that it attributes to appellant that portion of the parent's income which constitutes the latter's profit from the activities of appellant in Wisconsin. As is stated by Judge CARDOZO in the *Studebaker Case, supra* (p. 122) :

"The tax has been laid upon the theory that the profit to the agent in order to be fair and reasonable must absorb the entire profit to the principal from the business of the agency. . . . The privilege for which the appellant has been taxed is the privilege of selling in New York the products of its principal. The business transacted by the principal included the process of manufacture carried on in Michigan and Indiana, a process which was anterior of necessity to any service by the agent. We find no basis for holding that a fair agreement between the parent which manufactured and the subsidiary which sold would have given the whole profit to the subsidiary and nothing to the parent."

Judge CARDOZO concedes, as did this court in the *Curtis Case, supra,* that if the selling agency is a mere bookkeeping device of the parent, there is power in the taxing state to assess the parent corporation upon its activities there and to use a consolidated return to apportion the proper amount of this tax to the taxing state. But where a statute, as does sec. 71.25, requires that the subsidiary be treated as an entity and its income established, the commission must comply and it may not do this by assigning to the subsidiary profits of the parent corporation from dealings with the subsidiary. The use of the ratio is based upon the theory that a single taxpayer is involved and that the application to this taxpayer's total

income of a percentage which is the average of the ratios gives a fair approximation of the entire income of this taxpayer in this state. Upon this theory, the use of ratios has been sustained. *Hans Rees' Sons v. North Carolina,* 283 U. S. 123, 51 Sup. Ct. 385, 75 L. Ed. 879. This is what the application of the ratios in this case actually accomplished, and it matters little whether appellant be considered an entity, and hence taxed upon the income of another, or whether the effect is to levy a tax indirectly upon the parent corporation. In neither case does the method answer the calls of sec. 71.25.

As Judge Cardozo points out, there should be little difficulty in addressing the inquiry to the question how much would have been made had contracts not artificially controlled the income. A consideration of the usual or customary commissions and the normal and usual expenses of selling and servicing, the profit or loss on trade-ins, and other such matters, would bear directly upon the issue prescribed by sec. 71.25, Stats., and lead to an answer to the statutory question. This we hold to be the proper method of approach.

We are cited to several cases which warrant brief mention. Respondent relies upon *Buick Motor Co. v. Milwaukee* (D. C.), 43 Fed. (2d) 385, affirmed 48 Fed. (2d) 801, *certiorari* denied, 284 U. S. 655; *Palmolive Co. v. Conway* (D. C.), 43 Fed. (2d) 226, affirmed 56 Fed. (2d) 83, *certiorari* denied, 287 U. S. 601. In the *Buick Case* the federal court sustained an assessment arrived at by the process which we hold proper here, that is, one based upon a consideration of what the normal commissions, profits, and expenses of the selling subsidiary would have been. In the *Palmolive Case* we discover nothing in the opinions either of the district court or circuit court of appeals to indicate that the court addressed itself to the question that we are here considering. It does not appear from the reports of the case how the Tax Commission allocated the income in disregard of the intercorporate arrange-

ments, and neither of the opinions of the federal courts appears to consider the propriety of the commission's actions under the statute. The federal court considered and determined the power of the state to deal with such evasion as was disclosed by the facts. This question is not involved here. The power of the state to disregard the corporate entity when the latter is used as a device for tax evasion is not questioned by appellant. The question here is the extent of the power vested in the commission under the statute and whether the assessment meets statutory requirements or achieves statutory objectives.

Appellant contends that its method of estimating income for the years 1929 to 1933, inclusive, establishes conclusively what it would have made but for the 1921 contract, and that its 1934 contract is in no way obnoxious to the policy of sec. 71.25, Stats. We conclude that this issue has never been tried. The commission did not meet appellant's evidence because it was of the view that it had a discretion to apply the ratios heretofore discussed. Appellant's evidence was treated as immaterial and not as true. Hence, we conclude that the matter must be remanded to the commission for an assessment upon what we hold to be a proper basis.

*By the Court.*—Judgment reversed, and cause remanded with directions to remand the record to the Tax Commission or its successor for further proceedings.