INTERSTATE FINANCE CORPORATION, Respondent, v. DEPARTMENT OF TAXATION, Appellant.*

*September 7—October 5, 1965.*

* Motion for rehearing denied, without costs, on November 30, 1965.

264

For the appellant the cause was argued by *Harold H. Persons,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Ross, Stevens, Pick & Spohn,* attorneys, and *Frank A. Ross, Sr.,* of counsel, all of Madison, and oral argument by *Frank A. Ross, Sr.*

BEILFUSS, J. On this appeal the issues are: (1) Were the operations of Interstate in Wisconsin an integral part of a multistate unitary business; (2) if such operations were an integral part of a unitary business was it mandatory that the apportionment method be used to compute the Wisconsin taxable income; and (3) if the apportionment method is used should the income of Interstate's wholly owned subsidiaries be included in the accounting formula?

Interstate is engaged principally in automobile financing at both the wholesale and retail levels. The wholesale business involves financing of automobile dealers on their stock of automobiles. The retail business involves the purchase of the automobile dealer's interest in its consumer sales contracts. '

All of the funds necessary for these loaning transactions are acquired by the home office. Interstate's outstanding accounts receivable are about $40,000,000. About 75 percent or $30,000,000 of these funds are acquired by Interstate in the money market on open account on plain note basis. All of the negotiations by which Interstate obtains the funds to carry on its business are conducted by the home office through its president, Mr. David B. Cassat, and his son and vice-president, George Cassat. Through the efforts of Mr. Cassat and his son, Interstate has obtained a substantial line of credit in a great many of the major banks throughout the country. Additional funds are obtained from insurance companies and other institutional lenders as well as from the sale of preferred stock.

Interstate's home office determines all matters of general company policy and exercises general supervisory control over the activities of each of the branches. It selects, trains, transfers, consults and generally oversees the branch managers. It sets policy and extensively reviews the activities of the branch office. The home office participates in loan

decisions on wholesale business and loans over $5,000, maintains a central accounting system, takes possession of most of the security documents, accepts drafts, withdraws funds from branch depositories, pays all branch employees, and designates local law firms to be used by the branches. Quite significant is the fact that the home-office expense is allocated to various branches based upon the number of accounts serviced compared with the total number serviced.

The branch manager does have considerable responsibility and authority. He selects, directs, and supervises the staff of the branch office, including solicitors, collectors, stenographers, and clerks. He makes the decision on all retail loans under $5,000 subject only to home-office guidelines. He supervises collections. He checks security and the sufficiency of the security instruments. He determines local advertising policy.

As to the wholesale financing, the solicitation is done by the branches but the decision to finance the specific dealers is made jointly by the branch managers and the home office. The home office either dictates or approves the terms of the dealer wholesale loans at their inception.

The record reveals other evidence as to the participation of the home and branch offices but it is not necessary to report it in detail for a determination of the issues.

The statute directing the manner of imposition of income tax upon persons (including corporations) doing business within and without the state is sec. 71.07 (2), Stats. In 1949, at the request of the governor, the statute was amended to its present form. The obvious purpose of the amendment was to expand the use of the apportionment formula in calculating the income tax of unitary-business organizations doing business within and without the state.

The statute has remained unchanged since 1949 and provides as follows:

"(2) Persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state. The amount of such income attributable to Wisconsin may be determined by an allocation and separate accounting thereof, when the business of such person within the state is not an integral part of a unitary business, provided, however, that the department of taxation may permit an allocation and separate accounting in any case in which it is satisfied that the use of such method will properly reflect the income taxable by this state. In all cases in which allocation and separate accounting is not permissible, the determination shall be made in the following manner: There shall first be deducted from the total net income of the taxpayer such part thereof (less related expenses, if any) as follows the situs of the property or the residence of the recipient; provided, that in the case of income which follows the residence of the recipient, the amount of interest and dividends deductible under this provision shall be limited to the total interest and dividends received which are in excess of the total interest (or related expenses, if any) paid and allowable as a deduction under section 71.04 during the income year. The remaining net income shall be apportioned to Wisconsin on the basis of the ratio obtained by taking the arithmetical average of the following 3 ratios: . . ."

From the recited facts we conclude that the board has before it ample credible evidence upon which to find that Interstate was a unitary business and that the Wisconsin branches were an integral part thereof.

*Celon Co. v. Department of Taxation* (1955), 269 Wis. 372, 69 N. W. (2d) 453, construed sec. 71.07 (2), Stats. In defining a unitary business the court quoted a definition contained in *State ex rel. Maxwell v. Kent-Coffey Mfg. Co.* (1933), 204 N. C. 365, 168 S. E. 397, as follows:

" 'It is admitted in the brief for appellee that its business is unitary. That term is simply descriptive, and primarily means that the concern to which it is applied is carrying on

one kind of business—a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration, as independent units. By contrast, a dual or multiform business must show units of a substantial separateness and completeness, such as might be maintained as an independent business (however convenient and profitable it may be to operate them conjointly), and capable of producing a profit in and of themselves.

" 'Conceding that a unitary business may produce an income which must be allocated to two or more states in which its activities are carried on, such a business may not be split up arbitrarily and conventionally in applying the tax laws. It would seem to be necessary that there should be some logical reference to the production of income; the distinction should be founded on a corresponding difference in apportionment of productive capital, investment, or employment, within the unitary business.' "

In *W. R. Arthur & Co. v. Department of Taxation* (1962), 18 Wis. (2d) 225, 230, 118 N. W. (2d) 168, we said: "A 'unitary' business is one which functions as a single unit; that is, it is not divided into a separate entity for each of the states in which it operates."

The text authority, Altman & Kiesling, in Allocation of Income in State Taxation (2d ed.), p. 101, states:

". . . the essential test is whether or not the operation of the portion of the business within the state is dependent upon or contributory to the operation of the business outside the state. If there is such a relationship the business is unitary."

The Wisconsin branches were wholly dependent upon the home office for the only commodity upon which its business was based, namely, money to lend. In addition thereto, the control and supervision by the home office over the branch managers and branch activities were substantial. Because of the policies, direction and control exercised by the home of-

fice, the branches could not operate independently. They were a dependent part of a business unit.

The branches were also an integral part of the entire business of Interstate. It is apparent the volume of business done by the Wisconsin branches was an important factor in determining the amount of money that Interstate borrowed in the money market for its overall business operations. It is equally significant that the expense of maintaining the home office was allocated proportionately to the number of accounts serviced by the various branches. These two factors alone made the Wisconsin branches an integral part of a unitary business.

Interstate contends that because of the nature of the finance business, as contrasted to a manufacturing or service business, the branches could operate independently. They could borrow the funds to do business with the same sources and same ease and their business could be successfully operated without control and supervision from the home office. Even if this allegation is accurate, the fact is that the branches were not operated in that manner. If the branches were to be operated independent of the home office, substantial changes would occur in the scope of business activities of both the home office and the branch offices. The Wisconsin branches were an integral part of a unitary business engaged in business within and without the state.

*Celon Co. v. Department of Taxation, supra,* held that sec. 71.07 (2), Stats., required the Department of Taxation to accept the taxpayer's returns submitted on an apportionment basis rather than a separate accounting allocation when it appeared that the Wisconsin operations were an integral part of a multistate unitary business.

The *Celon Case* discusses the legislative history of the statute and the 1949 amendment, including the recommendations of the legislative council and the governor. What we

said in *Celon* will not be repeated here except the conclusion reached therein (p. 377) :

"Probably the language of the statute is sufficiently clear without the above history to require that the apportionment method of accounting be used by a company engaged in business within and without the state when the business of such company within the state is an integral part of a unitary business. Certainly in view of the history of the amendment no other interpretation can be given to it."

Interstate contends that the statute does not require the apportionment method of determining income tax be used where that method results in an unfair or inequitable tax as where it would in effect tax income not created or earned in Wisconsin; and further, that if the method used subjected the taxpayer to such a result the statute would be unconstitutional under both the Wisconsin and United States constitutions. [1]

The subsections of sec. 71.07, Stats., do provide that where business conducted in the state is *not* an integral part of a unitary business the allocation and separate accounting may be used. The subdivisions have set forth statutory ratios for the apportionment method but give the department considerable latitude in adopting a formula which will most accurately reflect a reasonable and equitable tax on the in-

---

[1] In support of its contention, Interstate cites : *Butler Brothers v. McColgan* (1942), 315 U. S. 501, 62 Sup. Ct. 701, 86 L. Ed. 991; *Newport Co. v. Tax Comm.* (1935), 219 Wis. 293, 261 N. W. 884; *Adams Express Co. v. Ohio* (1897), 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683; *Hans Rees' Sons v. North Carolina* (1931), 283 U. S. 123, 51 Sup. Ct. 385, 75 L. Ed. 879; *Fisher, Treas. of North Dakota v. Standard Oil Co.* (1926), 12 Fed. (2d) 744; *Magnolia Petroleum Co. v. Oklahoma Tax Comm.* (1941), 190 Okla. 172, 121 Pac. (2d) 1008; *McWilliams Dredging Co. v. McKeigney* (1956), 227 Miss. 730, 86 So. (2d) 672; *Texas Co. v. Cooper* (1958), 236 La. 380, 107 So. (2d) 676; *Cleveland-Cliffs Iron Co. v. Dept. of Revenue* (1950), 329 Mich. 225, 45 N. W. (2d) 46.

come earned in Wisconsin. The statute further provides that if the taxpayer can show, to the satisfaction of the Department of Taxation, that the ratio or formula used is unreasonable or inequitable the formulas may be altered to determine the tax.

The latitude of the statute is such that the statute itself is not unconstitutional as being arbitrary or unreasonable or taxing extraterritorial income.[2] The application of the statute in some instances, however, might be.

Interstate contends that the returns filed on the allocation and separate accounting basis demonstrate that the Wisconsin branches either lost money or show an income less than that charged to them under the apportionment basis, and as such Wisconsin is imposing a tax on income not earned within the state.

In *Butler Brothers v. McColgan* (1942), 315 U. S. 501, 62 Sup. Ct. 701, 86 L. Ed. 991, the taxpayer, Butler Brothers, a wholesale merchandising company whose home office was in Illinois and had branches in seven different states, attempted to show that its branch in California operated at a $70,000 loss as reflected in a separate accounting return and that an income tax calculated upon an apportionment basis was unconstitutional because it taxed extraterritorial values. The United States supreme court, in deciding the issue, stated as follows (p. 507) :

"One who attacks a formula of apportionment carries a distinct burden of showing by 'clear and cogent evidence' that it results in extraterritorial values being taxed. See *Norfolk & Western Ry. Co. v. North Carolina,* 297 U. S. 682, 688. This Court held in *Hans Rees' Sons v. North Carolina, supra,* p. 135, that that burden had been maintained on a showing by the taxpayer that 'in any aspect of the evidence' its income attributable to North Carolina was 'out of all appropriate

<hr>

[2] *W. R. Arthur & Co. v. Department of Taxation* (1962), 18 Wis. (2d) 225, 118 N. W. (2d) 168.

proportion to the business' transacted by the taxpayer in that State. No such showing has been made here."

The burden to show that the formula used imposes an unreasonable or inequitable tax is clearly upon the taxpayer.[3]

Interstate did not attack or challenge the formula either before the board of tax appeals or in the circuit court. Nor did it offer proof to show the tax was unfair under the apportionment formula used. This issue cannot be raised for the first time upon appeal to this court.

We have determined that Interstate is a unitary business and that the Wisconsin branches are an integral part thereof. Should the operations of the wholly owned subsidiary corporations be included in the apportionment accounting formula?

The Department of Taxation insists that it must tax each legal entity separately. The three Wisconsin corporations did in fact each file its own independent and separate return for the years in question.

Interstate contends that if it is a unitary business and an apportionment formula must be used in reporting its income, then the operations of all of its wholly owned corporations must be included in the formula. Interstate points out that its relationship to the subsidiary corporations is the same as to the branches and that these corporations are a part of the entire economic unit. The trial court agreed with Interstate, reversed the board, and remanded the matter to the department.

Since the inception of our income-tax laws we have adhered to the legal-entity theory; that is, each separate legal entity is required to file its own separate return.

Wisconsin does not authorize income tax on a consolidated basis. The attorney general correctly argues that the state has on three occasions attempted to require consolidated re-

---

[3] See also *W. R. Arthur & Co. v. Department of Taxation, supra.*

turns of two or more multistate corporations and in each instance was advised that there was no statutory basis for such procedure. *Northern States Power Co. v. Tax Comm.* (1941), 237 Wis. 433, 297 N. W. 578; *Curtis Companies, Inc., v. Tax Comm.* (1934), 214 Wis. 85, 251 N. W. 497; *Burroughs Adding Machine Co. v. Tax Comm.* (1941), 237 Wis. 423, 297 N. W. 574.

Each of the cases just cited was decided before the 1949 amendment to sec. 71.07 (2), Stats. The trial court concluded that the 1949 amendment required the adoption of the "economic theory" because the statute as amended specifically referred to a "unitary business" and did not restrict it to a "legal entity" or single company.

Supporting the "economic theory" is *Edison California Stores v. McColgan* (1947), 30 Cal (2d) 472, 480, 183 Pac. (2d) 16. In that case 15 subsidiary corporations were included in the apportionment formula applied to the parent company. In coming to its decision, however, the California court was required to say this about its tax statutes:

"It may be assumed that section 14 of the act, which authorizes the commissioner to require a consolidated return, contemplates two or more corporations both or all of which are taxable as doing business within the state."

Our statutes do not authorize the department to require a consolidated return.[4] This difference is significant and controlling. The 1949 amendment authorizing the apportionment method for unitary businesses does not change the Wisconsin practice of requiring returns for each legal entity. Such a change would have to be implied. None of the ad-

[4] Sec. 71.11 (7), Stats., permits the department to require consolidated "statements" by interrelated corporations when it has reason to believe that an improper net income is reported as to *any one* of the corporations because of improper intercorporate dealings. This statute has no application to the issue at hand.

ministrative authority, nor direction for such a change, was made by the legislature. As the state points out, the administrative changes would be numerous, complex, and without legislative guidelines. If the legislature intended such a drastic change it could have or can do so. We do not believe the court should give such construction to the statute by implication.

We agree with the trial court that Interstate's Wisconsin branches are an integral part of a multistate unitary business. and that Wisconsin income tax must be determined on an apportionment-basis formula. We disagree with the trial court in its determination that the operations of Interstate's wholly owned subsidiary corporations should be included in the apportionment formula.

*By the Court.*—Judgment reversed, with directions to enter judgment affirming the order of the Wisconsin board of tax appeals.

WILKIE, J., took no part.