49061, 49086. BLACKMON v. GABLE INDUSTRIES, INC.; and vice versa.

ARGUED FEBRUARY 12, 1974 — DECIDED APRIL 22, 1974 — REHEARING DENIED JULY 11, 1974 —

*Arthur K. Bolton, Attorney General, H. Perry Michael, Lauren O. Buckland, Assistant Attorneys General,* for appellant.

*Troutman, Sanders, Lockerman & Ashmore, Carl E. Sanders, Dale M. Schwartz,* for appellee.

STOLZ, Judge.

The plaintiff taxpayer bases its claim upon the contention that the qualifying phrase (which we have italicized) in the provision of Code Ann. § 92-3202, "The income of two or more corporations shall not be included in a single return *except with the expressed consent of the Commissioner,"* which was added by Ga. L. 1941, pp. 210, 219 (as amended by Ga. L. 1943, p. 109), gave it the right to file a *consolidated* income tax return, having obtained the alleged "expressed consent of the Commissioner."

The above statute provides for the inclusion (with consent) of the income of two or more corporations in a *single* return, and does not use the term *consolidated* return. Although there was a limited right to file consolidated *federal* income tax returns during the period in question, there was no Georgia statute making such specific provision in effect during the periods in question. On February 14, 1969, the Attorney General rendered an opinion (Opinions of the Attorney General, No. 69-77) that the right to file consolidated income tax returns was not granted by Code Ann. § 92-3202. Although this opinion is not binding on the courts, we adopt it as a

correct statement of the law as of the periods in question, and quote from it as follows:

"This is in reply to your recent letter requesting my opinion as to whether the 1941 amendment (Ga. Laws 1941, pp. 210, 219) to Code Ann. § 92-3202 confers the right to file a 'consolidated income tax return' on corporations affiliated by common ownership or control.

"If by a 'consolidated income tax return' is meant one prepared on the basis that each member of a group of corporations owned or controlled by the same interests is not a taxable entity but is merely a part of a taxable entity, then, in my opinion, neither the 1941 amendment nor any other provision of the Georgia Income Tax Act (Code Ann. Chs. 92-30, 92-31, 92-32, 93 [sic]-33), for that matter, creates such a right. Such a right would result in a reduction of the aggregate liability of the group in years in which some, but not all, of its members sustained a net loss, for each member sustaining a net loss would, in effect, be allowed to offset its net loss against the net income of those members having net income. If the General Assembly had intended such a result, it would have made provision for it in clear and unmistakable language, for it is said that a statute levying a tax will not be extended by implication beyond the clear import of its terms. Gould v. Gould, 245 U.S. 151, 153, 62 L.Ed. 211, 213, 38 S.Ct. 53 (1917).

"It should be noted that the only change the act of 1941 (Ga. L. 1941, pp. 210, 219) made in Code Ann. § 92-3202 was to add the words 'except with the expressed consent of the Commissioner' to the second sentence of that Section. Prior to 1941, the second sentence read, 'The income of two or more corporations shall not be included in a single return.'

"In arriving at the conclusions expressed herein, I have not been unmindful of the fact that, for federal income tax purposes, Congress has granted the right of filing a consolidated return to certain affiliated corporations. I. R. C. (1954) §§ 1501 to 1505. However, in 1941, that right did not extend to corporations generally, it having been limited to railroad corporations in 1934. 8A Mertens, Law of Federal Income Taxation, § 46.02, p. 9. Although it was extended to corporations generally for

purposes of the excess profits tax in 1940, it was not until 1942, after the 1941 amendment, that it was restored to corporations generally for Federal income tax purposes. Id. at 10.

"Moreover, assuming arguendo that the General Assembly, by amending Code Ann. § 92-3202, intended to grant the right to file a consolidated return to certain corporate taxpayers, to which corporations did it grant the right? Nowhere in the Code, in § 92-3202 or in any other section relating to income taxation, can anything be found which attempts to answer this question. Certainly, the General Assembly did not intend that just any group of corporations, no matter what the relationship between its members, should have the right. Congress expressly limited the right to an affiliated group of corporations, I. R. C. (1954) § 1501, and then undertook to define 'an affiliated group' I. R. C. (1954) § 1504. Congress, furthermore, directed the Secretary of the Treasury or his delegate to prescribe regulations governing the filing of a consolidated return and the manner of computing the affiliated group's liability. I. R. C. (1954) § 1504.

"To understand the import of the amendment to Code Ann. § 92-3202, one must consider it together with Code Ann. § 92-3113 (6), which was also added by the act of 1941. The obvious purpose of Code Ann. § 92-3113 (6) is to provide the State Revenue Commissioner with the means of preventing tax evasion by contracts or other arrangements between a parent and a subsidiary or between other corporations affiliated by stock ownership or control which do not act at arms length in dealing with one another.

"A common method of evasion employed by such taxpayers is for one member of the group subject to taxation in a particular state to shift or divert a part of its income to some other member which does no business in the state and is, consequently, not subject to taxation by that state. For example, a corporation is organized to engage in manufacturing in a state that either has no income tax law or has low rates. The goods manufactured by it are then distributed by one or more affiliated corporations, created for that purpose, in states that tax

net income or tax it at a higher rate than the state of manufacture. By arranging for the selling corporations to buy from the manufacturing corporation at artificially high prices, those owning or controlling the affiliated group are able to bleed off some of the income that, if the parties were acting at arms length, would be either subject to taxation or subject to taxation at high rates. For a collection of cases dealing with the effect of transactions between affiliated corporations in this context, see 130 A. L. R. 1183, 1217.

"Although the State Revenue Commissioner might have sufficient authority to prevent evasion without the benefit of Code Ann. §§ 92-3113(6) and 92-3209, both of which have the same broad purpose of preventing tax evasion, these Sections were apparently adopted to remove any doubt about the matter. Therefore, considering the amendment to Code Ann. § 92-3202 against this backdrop, it seems certain that the General Assembly, by adopting this amendment, has not given to corporate taxpayers for Georgia income tax purposes the right which Congress has given them, through enactment of I. R. C. (1954) §§ 1501 to 1505, for federal income tax purposes. What it has done is to make certain that the Commissioner can require corporate taxpayers to furnish him, in consolidated form if he should deem that helpful, any information that would enable him to discharge his duty of determining the true net income of each corporation belonging to a group owned or controlled by the same interest. See Burroughs Adding Machine Co. v. Wisconsin Tax Commission, 237 Wis. 423, 297 N. W. 574 (1941); Curtis Companies, Inc. v. Wisconsin Tax Commission, 214 Wis. 85, 251, N. W. 497, 92 A. L. R. 1065 (1933)."

Code Ann. § 92-3102 (b, 10, i), added by Ga. L. 1969, pp. 114, 115, provides as follows: "If two or more corporations file Federal income tax returns on a consolidated basis, and in the event that all of such corporations derive all of their income from sources within Georgia, they must file consolidated returns for Georgia income tax purposes. Affiliated corporations which file a consolidated Federal income tax return, but derive income from sources without this state must file

separate income tax returns with Georgia, unless they have prior approval or have been requested to file a consolidated return by the Department of Revenue." Hence, even under the *present* law, the plaintiff and its subsidiaries, which do not all derive all of their income from sources within Georgia, must file separate Georgia income tax returns unless they have the prior approval of or request by the Department of Revenue to file a consolidated return.

The permissions granted by the previous commissioner for the filing of *consolidated* returns, then, purported to grant a privilege not authorized by law. Furthermore, they were revocable by their terms and therefore the taxpayer could not claim to have an *unconditional* right thereto, even if the law had made provision therefor. Under the provisions of Code Ann. § 92-3302 (as amended by Ga. L. 1960, pp. 1005, 1007) and § 92-3303 (as amended by Ga. L. 1965, pp. 276, 277), the commissioner can assess any deficiencies he determines exist within three years after the return was filed. As provided in Art. VII, Sec. I, Par. I of the Constitution of 1945 (Code Ann. § 2-5401), "The power to tax corporations . . . shall not be surrendered or suspended by any contract, or grant to which the State shall be a party." The commissioner cannot be estopped by previous administrative actions taken, when he determines that such actions will reduce the tax liability of the corporations. Cf., *State Revenue Commission v. National Biscuit Co.,* 179 Ga. 90, 100 (175 SE 368).

In a suit for the refund of income taxes, the taxpayer must (1) establish that the taxes were erroneously or illegally collected (Code Ann. § 92-8436; Ga. L. 1937-38, Ex. Sess., pp. 77, 94; 1945, pp. 272, 274; 1955, pp. 455, 458; 1971, p. 378; 1973, p. 507), and (2) prove (if not plead) his true and correct tax liability. Cf., *Oxford v. Shuman,* 106 Ga. App. 73, 77 (2b) (126 SE2d 522). In the case sub judice, the taxpayer has shown neither of the above with respect to any or all of the tax years in question; therefore, for the years 1965, 1966 and 1967, the denial of the commissioner's motion for summary judgment and the grant of the taxpayer's motion for summary judgment were errors. With respect to the year 1968, the grant of

the commissioner's motion for summary judgment was correct.

*Judgment reversed in the main appeal, affirmed in the cross appeal. Bell, C. J., Eberhardt, P. J., Pannell, P. J., and Clark, J., concur. Deen, Quillian and Webb, JJ., dissent.*

DEEN, Judge, dissenting in part.

The "tentative permission" for Fuqua to join Claussen's, Inc. in its return began with the return for the fiscal year July 1, 1963 through June 30, 1964, inclusive. It thus also covered the fiscal year of July 1, 1964 through June 30, 1965, which is the first year in dispute here. Thereafter, by a letter dated September 20, 1966, "tentative permission" was given to file a joint return with Rentavision of Brunswick, Inc., which by implication (and express mention in the letter requesting such permission) also included Claussen's, Inc.

This second letter specifically states, as the first letter did not, that the permission is conditioned on the department's right to revoke "in the event such audit reveals that this method does not reflect the true income attributable to the State of Georgia," and other conditions regarding net operating losses. In my opinion it is obvious that the second letter places the burden on the taxpayer to substantiate its position in a manner which the first letter did not do, and that the first permission, which affected Claussen's Inc. and the year ending June 30, 1965, was sufficiently broad that the taxpayer could bona fide rely upon it and make a proper return thereunder.

I would therefore affirm the trial court as to the 1965 return, but agree to the judgment of reversal as to the remaining years, though not for all the reasons assigned in the opinion.

I am authorized to state that Judges Quillian and Webb concur in this dissent.